*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E.A., Minor.

UNPUBLISHED
November 30, 2023

No. 366383
Hillsdale Circuit Court
Family Division
LC No. 21-000497-NA

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Respondent-mother appeals as of right the court order terminating her parental rights to minor child, EA, under MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(c)(*ii*), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(j). Respondent argues that the court erred by determining that there was enough evidence to support that termination was in the child's best interests. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This appeal arises respondent-mother's termination of her parental rights to the minor child. The matter began approximately 17 months prior to termination when a petition was filed which specifically alleged that, on April 5, 2021, Children's Protective Services (CPS) received a complaint of improper supervision. According to the complaint, respondent-mother had passed out while her minor children[1] were present, and one of the minor children attempted to wake her but was unsuccessful. Respondent-mother voluntarily sought medical and psychological treatment following law enforcement intervention. Two of the minor children reported to law enforcement that respondent-mother would leave them home alone, sometimes throughout the night. During the CPS investigation, respondent-mother admitted to using "$500 a day on crack and $30-$50 a

---

[1] Respondent-mother has other minor children who are not the subject of this appeal. On April 6, 2021, respondent-mother tested positive for benzoylecgonine and cocaine. Subsequently, respondent-mother voluntarily entered a safety plan and agreed to have her minor children reside with their fathers. None of respondent-mother's children have resided with her since the initial petition was filed in this matter.

week on methamphetamine." Respondent-mother explained that the minor children would be home while she would consume drugs in her vehicle or outside of her apartment.

Initially, respondent-mother undertook significant steps to attain sobriety. As noted by the court, she was able to remain sober for extended periods and seemed as if she was on the path to reunification. But her sobriety never lasted and during the pendency of this matter, respondent-mother was incarcerated at least three times, and relapsed several times. Following her episodes of relapse, the court informed respondent-mother that it would request that petitioner begin termination proceedings. After being so warned, respondent-mother would regain her sobriety and refocus her energies on reunification only to relapse. After seventeen moths, a petition for termination was filed.

During the termination hearing, respondent-mother testified that she relapsed several times, admitted to using several drugs during the pendency of the proceedings and being unable to secure employment and a proper place where the minor child could reside. Respondent-mother testified that she had to decide where to live before she could get a job because she would have to walk to work as she was without a car. But during these proceedings, respondent-mother had several opportunities to secure employment that would have allowed her to find a proper home and transportation. Ultimately, her addictions prevented respondent-mother from accomplishing any of her goals.

Following testimony and another short delay, the court issued a written opinion in the matter. In its opinion, the court provided a detailed account of each service offered to respondent-mother. Addressing MCL 712A.19b(3)(c)(*i*) and (*ii*), the court explained that it had been approximately 17 to 18 months since the initial disposition. Under Subsection (3)(c)(*i*), the court found that respondent-mother's substance-abuse issues continued to exist based on her positive drug screen on March 9, 2022, two days after successfully completing intensive inpatient and outpatient treatment and her relapse in August 2022 when she disappeared for half of the month. The court noted respondent-mother's sobriety since August 2022. The court determined that there was also enough evidence for termination under Subsection (3)(c)(*ii*) based on mother's current housing and employment issues. The court noted that respondent-mother's housing was appropriate at the initiation of the case, but it was now inappropriate because of her lack of rehabilitation and incarceration.

Addressing MCL 712A.19b(3)(g), the court found that respondent-mother had not been employed upon case initiation and that she was unable to maintain consistent employment throughout the case. The court noted that respondent-mother was currently unemployed and had no means to support her minor child.

Addressing MCL 712A.19b(j), the court found that respondent-mother's life was unstable because of her lack of housing, income, and sobriety, emphasizing mother's inconsistency with maintaining her sobriety.

Addressing the best-interest factors, the court indicated that the minor child had been in care for half of her life. The court discussed the minor child's trauma associated with being bonded with both of her parents and then removed and subsequently placed with her maternal aunt and then being removed. The court explained that the minor child was thriving with her maternal uncle

and how her bond with both parents had weakened throughout the case because of both parent's long absences from her life. The court explained that the catalysts for the case had not been addressed because respondent-mother had not obtained a home, or employment, and had not maintained a period of sobriety long enough to exemplify long-term success. Because of this, the court determined that there was a limited likelihood that the minor child could be returned to respondent-mother's home in the foreseeable future.

The court further explained that the minor child's placement had provided her with a stable home and was willing to make the home permanent. The court specifically mentioned the minor child's involvement in preschool, dance/tumbling classes, and extracurricular activity encouragement. Additionally, the court discussed how the minor child's clothing and medical needs were being met and the minor child's description of her placement as "mom" and "dad." The court explained that neither respondent-mother nor the father were able to provide the consistency, stability, and permanency that the minor child's placement was able to provide.

The court specifically addressed respondent-mother and explained that she had been recognized for her effort to remain sober; however, respondent-mother's inconsistency in remaining sober weighed in favor of termination. The court also specifically addressed the minor child's placement being a relative placement by stating,

> The child's placement is a relative placement which often ways [sic] against termination; however, in this case the child has already experienced multiple traumatic events during her young life and the consistency and stability provided by the maternal uncle and aunt weigh heavily in favor of termination in order to provide her consistency, stability, and permanence.

Following the court's order, this appeal ensued.

## II. ANALYSIS

We review "for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and . . . the court's decision regarding the child's best interest." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).

"[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *Id*. at 90. "[T]he focus at the best-interest stage" is on the child, not the parent. *Id*. at 87. The court should weigh all the evidence available to it in determining the child's best interests. *In re Trejo*, 462 Mich at 356-357. The court may consider factors including "the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). This Court has also considered the length of time the child was placed in foster care or with relatives and whether it

-3-

was likely "that the child could be returned to her parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). To determine whether termination of parental rights is in a child's best interests, this Court may consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. *In re White*, 303 Mich App 701, 715; 846 NW2d 61 (2014).

On appeal, respondent argues that the court failed to consider that the child was placed with a relative placement and how it weighed against termination. Additionally, respondent argues that the court improperly focused its decision on stability and permanency and that the court failed to consider all other factors, including whether guardianship was in the child's best interests. Because respondent-mother does not challenge the statutory grounds for termination, we address only the court's findings as to whether termination was in the best interests of the minor child.

Contrary to respondent-mother's assertions on appeal, the record reveals that the court repeatedly acknowledged that the child was placed with a relative throughout the case proceedings. Additionally, in the final order and opinion, the court specifically stated, "The child's placement is a relative placement which often ways [sic] against termination . . . ." The court then considered each applicable factor including the child's bond with respondent; the child's need for permanency, stability, and consistency; the advantages of the child's foster placement over respondent's home; the length of time that the child was not in respondent's care; and if the child could be returned to respondent's care in the foreseeable future. Additionally, the court referred to respondent's parenting ability and the successful completion of her parenting program. Furthermore, and contrary to respondent's argument, the court did consider respondent's early suggestion for guardianship. At a review hearing in November 2022, the court expressed that respondent should consider getting released from incarceration to attend treatment, explaining that the court's priority was to protect the child. The court explained that the Department of Health and Human Services opposed guardianships for children under the age of four years but challenged respondent to obtain sobriety and adhere to her service plan, emphasizing that absolute permanency was a must for the child.[2]

---

[2] Relative to such a policy, our Supreme Court in *In re Affleck/Kutzleb/Simpson*, 505 Mich 858; 935 NW2d 316 (2019), determined that DHHS's general policy in opposition to guardianship for a child under 10 was inappropriate and it remanded to the trial court for reconsideration of the children's best interests:

> On order of the Court, the application for leave to appeal the August 15, 2019 judgment of the Court of Appeals is considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we VACATE that part of the judgment of the Court of Appeals addressing the trial court's best-interest determinations, and we REMAND this case to the Oakland Circuit Court for reconsideration of whether terminating respondent's parental rights is in the best interests of each child. MCL 712A.19b(5). *Petitioner did not consider recommending a guardianship for KPA and BEK with respondent's mother because of a purported departmental policy against recommending guardianship for children under the*

Evidence was presented that respondent had maintained her sobriety for at least four months and was progressing toward obtaining a suitable residence and employment to provide for the child. Various witnesses testified that respondent had been an active participant in recent services and that respondent was putting forth significant effort at the time of the termination hearing. Additionally, witnesses testified that respondent had a strong bond with the child and that she loved the child very much.

However, the minor child was thriving and doing very well under her maternal uncle's care and was involved with extracurricular activities and undergoing extensive and successful therapy that was necessary based on the trauma that the child endured while in respondent's care. The minor child's placement was actively implementing the strategies provided by the child's therapist and maintaining a healthy relationship between the child and respondent at the same time. Further, there was evidence that the child often referred to her placement providers as "mom" and "dad" but would exhibit confusion by referring to respondent as "mom" and believing that her foster-care siblings were moving when they stayed overnight elsewhere. Evidence was presented that the child had adjusted well to her daycare provider and that she was scheduled to start school. Additionally, evidence was presented that the child's behavior was improving and would only revert after visitation with respondent.

Respondent was unable to determine how long it would be until she would obtain housing and employment and subsequently be able to provide proper care for the child even after the court pleaded with the Department of Health and Human Services to delay the filing of the termination petition. Evidence was presented that respondent would need to maintain her sobriety for at least one year before the various professionals closely working with respondent would feel confident that respondent could withstand triggering episodes and maintain her sobriety. Additionally, respondent's history of sobriety and relapses corroborated the fact that respondent's road to recovery was in the beginning stage, and her long-term sobriety was unknown.

---

*age of 10. Absent contrary statutory language, such a generalized policy is inappropriate. On remand, the trial court shall address whether guardianship is appropriate for KPA and BEK as part of its best-interest determinations without regard to a generalized policy disfavoring guardianship for children under the age of 10. See In re Timon, 501 Mich 867, 867; 901 NW2d 398 (2017) ("On remand, the trial court shall make an individualized determination as to whether terminating respondent's parental rights is in the best interests of respondent's youngest child without regard to a generalized policy disfavoring guardianship for children under the age of 14.").* In addition, as part of its best-interest determinations, the court shall consider the sibling relationships, although the court shall decide the best interests of each child individually… (emphasis added).

Thus, we remind the trial court that our Supreme Court has made clear their disdain for a departmental policy regarding age restrictions on guardianships for children under a particular age. Based on the record before us, we do not conclude that the trial court put any emphasis on the alleged department policy, hence, reversal in this matter is not warranted.

Accordingly, the court had sufficient evidence to determine that the termination of respondent's parental rights was in the child's best interests.  See *In re Olive/Metts*, 297 Mich App at 41-42; see also *In re Frey*, 297 Mich App at 248-249.  Respondent-mother is not entitled to relief.

Affirmed.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick